IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 0 8 2006

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

| | |
|---|---|
| LAURA LAVIGNE for F.L., a minor child,<br>    Plaintiff, | )<br>)<br>) |
| v. | ) Civil Action No. 7:05cv00043<br>) |
| JO ANNE B. BARNHART,<br>COMMISSIONER OF SOCIAL SECURITY,<br>    Defendant. | )<br>) By:   Hon. Michael F. Urbanski<br>)          United States Magistrate Judge<br>) |

## MEMORANDUM OPINION

Plaintiff Laura Lavigne ("Lavigne") for F.L., a minor child, brought this action pursuant

to 42 U.S.C. § 1383(c)(3), which incorporates 42 U.S.C. § 405(g), for review of the decision of

the Commissioner of Social Security denying her claim for child's supplemental security income

("SSI") under Title XIV of the Social Security Act.  The parties have consented to the

undersigned Magistrate Judge's jurisdiction over this matter, and the case is before the court on

cross motions for summary judgment.  Having reviewed the record, and after briefing and oral

argument, the case is now ripe for decision.  As the undersigned finds substantial evidence to

support the determination that F.L. is not disabled under the Act, the ALJ's decision is affirmed.

## I

Plaintiff's daughter was born on July 7, 1988 and was in the ninth grade at the time of the

administrative hearing.  (Administrative Record, hereinafter "R.", at 18, 56, 303)  She was placed

in the homebound education program[1] in March, 2004 due to her stomach problems and suicidal

---

[1] Children who are unable to attend the regular public day schools because of physical
disabilities, disease, emotional disorders, congenital deformities, or pregnancy may be eligible
for homebound instruction.  (R. 218)

ideation. (R. 18, 303-04) Plaintiff filed an application for SSI, alleging disability on August 1, 1999, based on her child's diabetes mellitus and anxiety disorder. (R. 18, 56) Her application was denied initially and upon reconsideration. (R. 17)

Plaintiff and her daughter testified at an administrative hearing before an administrative law judge ("ALJ") on April 28, 2004. (R. 300-315) Following the hearing, the ALJ determined that the child's impairments do not meet or medically equal a listed impairment. (R. 23-24) Furthermore, he found that her limitations do not functionally equal a listed impairment by assessing her degree of limitation in each of six domains. (R. 28) Specifically, the ALJ found that Lavigne's daughter has "less than marked" limitations in domains 1, 5, & 6, and no limitations in the remaining three domains. (R. 25-28) Because her impairments neither meet a listing nor rise to the requisite level of severity for functional equivalence of a listing, the ALJ concluded that plaintiff's daughter is not disabled under the Act. (R. 28)

After the ALJ's decision, plaintiff submitted new evidence to the Appeals Council, which was subsequently incorporated into the record. (R. 274-299) The ALJ's decision became final for the purposes of judicial review under 42 U.S.C. § 405(g) when the Appeals Council denied plaintiff's request for review. (R. 6-7) Plaintiff then filed this action challenging the Commissioner's decision.

## II

Plaintiff argues that her daughter has marked limitations in three domains: interacting and relating with others, moving about and manipulating objects, and health and physical well-being. (Pl.'s Br. 11) Plaintiff alternatively requests that the court remand this case to the Commissioner

2

for consideration of new evidence under either sentence four or sentence six of 42 U.S.C.

§ 405(g), should the court fail to find functional equivalence of a listed impairment.

The court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the conditions for entitlement established by and pursuant to the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

**III**

The regulations provide a three-step analysis for determining whether a child is eligible for child's SSI on the basis of disability. 20 C.F.R. § 416.924. First, the Commissioner must determine whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924(b). If not, the Commissioner must determine whether the child suffers from a severe impairment or combination of impairments. 20 C.F.R. § 416.924(c). If the child suffers from a severe impairment or combination of impairments, it must then be determined whether the child's impairment meets, medically equals, or functionally equals an impairment listed in the Listing of Impairments at 20 C.F.R. pt. 404, subpt. P, app. 1. 20 C.F.R. § 416.924(d).

Functional equivalence is defined as an impairment of listing-level severity; for example, it must result in "marked" limitations in two domains of functioning, or result in an "extreme"

3

limitation in one domain. 20 C.F.R. § 416.926a(a).[2] The six relevant domains of functioning are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

In the present case, the ALJ properly followed the three-step sequential evaluation process. (R. 23) There is no issue as regards steps one and two, as Lavigne's daughter has not engaged in substantial gainful activity, and the ALJ determined her diabetes mellitus and anxiety disorder to be "severe" impairments. (R. 23)

As regards step three, the ALJ concluded the child's impairments do not meet or medically equal a listed impairment. Additionally, the ALJ determined that Lavigne's daughter's limitations do not meet the level of severity required for functional equivalence. (R. 28) While plaintiff argues F.L. has marked limitations in domains 3, 4, & 6, the undersigned finds substantial evidence to support the ALJ's opinion that she was not markedly limited in two or more domains.

### A. Domain 3: Interacting and Relating with Others.

Plaintiff argues that her daughter has marked limitations in the third domain: interacting and relating with others. (Pl.'s Br. 11) In support of this notion, plaintiff asserts that homebound education limits F.L.'s opportunities to interact with her peers. (Pl.'s Br. 11) Plaintiff contends that contrary to the ALJ's finding, her daughter rarely socializes or speaks to other children, she

---

[2] 20 C.F.R. § 416.926a(e)(2)(i) defines "marked" limitation as "more than moderate" but "less than extreme." Extreme limitation is defined as "more than marked." 20 C.F.R. § 416.926a(e)(3)(i). While extreme limitation is the rating given to the worst limitations, it does not necessarily require a total lack or loss of ability to function. Id.

4

wants to sleep all the time, and her physical and emotional problems prevent her from carrying on meaningful relationships with other children her age. (Pl.'s Br. 11-12)

The ALJ determined, however, that F.L. has no limitations in the third domain. (R. 26) The ALJ relied on hearing testimony of both plaintiff and her daughter, which he states indicates that F.L. has no difficulties with social relationships. (R. 26) Additionally, the ALJ cites the conclusion of the consultative psychologist that the claimant has only moderate limitations caused by her anxiety. (R. 26)

According to the applicable regulation, the Commissioner must analyze functioning in the third domain based on how well claimants "initiate and sustain emotional connections with others, develop and use the language of [their] community, cooperate with others, comply with rules, respond to criticism and respect and take care of the possessions of others." 20 C.F.R. § 416.926a(i). Claimants with limited functioning may lack close friends or close friends of the same age, avoid people, be overly anxious of meeting new people, have difficulty playing games or sports, have difficulty communicating with others, or have difficulty speaking intelligibly.[3] 20 C.F.R. § 416.926a(i)(3)(ii)-(vi).

In this case, there is little evidence that plaintiff's daughter has a marked limitation in the third domain. Plaintiff asserts a limitation based on F.L.'s placement on homebound instruction and the lack of socialization that results. However, in the relevant period of disability from August, 1999 to the present, F.L. has not consistently been on homebound education. F.L. was

---

[3] These examples are not inclusive, nor do they necessarily describe a "marked" or "extreme" limitation. Instead, the examples given in the regulation are meant to describe some limitations that may be considered in assessing the severity of limitation in the domain. 20 C.F.R. § 416.926a(3).

5

placed in the homebound program for four months from January, 2003 to April, 2003, (R. 110), and requested homebound education again in March, 2004 for the remainder of the school year. (R. 216) Thus, Lavigne's daughter has not been continuously isolated from her peers over the relevant period, nor is there evidence that she will need to spend the remainder of her high school days homebound. Homebound instruction is intended to be a service of short term duration. (R. 218)

While on homebound instruction, F.L. certainly has limited social interaction with her classmates. As she testified at the administrative hearing, when in the homebound program she has friends but does not have that much of a social life. (R. 308) She stated friends come over "once in a blue moon." (R. 308) Lavigne testified that her daughter never wants to call anyone or talk to anyone who calls to speak to her. (R. 313) While this social isolation gives rise to a limited ability and desire to interact with classmates, plaintiff presents no evidence to show that F.L. possesses other characteristics of a third domain limitation while she is homebound. The record gives no indication that F.L. has difficulty cooperating, responding to criticism, or sustaining relationships with family members and teachers while homebound. Additionally, her unwillingness to follow her dietary regimen appears to result more from F.L.'s desire "to be like everybody else," (R. 305), than from an inability to comply with rules.

Furthermore, F.L. said "at school, it was fine;" she interacted well with other children. (R. 308) In fact, she has stated that she "loves school," and that she has many friends. (R. 166) Plaintiff argues that F.L.'s teacher noted other students call her names and make fun of her, (R. 121); however, these notations were of "stressors" in F.L.'s life, as teasing is for any high school

6

student. There is no evidence in the record to indicate F.L.'s social interaction, communication, or cooperation while at school were markedly limited by her impairments.

For example, a mental health services report noted on March 26, 2004 that Lavigne's daughter was "[k]eeping up with friends. Likes socialization, parties, movies, pets." (R. 272) Additionally, Lavigne indicated in a disability function report on August 20, 2002, that her daughter did not have a limited ability to communicate with others. (R. 83) Lavigne also noted that F.L. has friends her own age, makes new friends, and generally gets along with other adults, including her teachers. (R. 85) F.L.'s middle school teacher confirmed this, pointing out the child has no problems whatsoever interacting and relating with others. (R. 92)

Additionally, while sexual abuse, (R. 246), constant fatigue, (R. 307, 312-13), carving on oneself, (R. 311), and eyebrow picking, (R. 311), are all qualities that have the potential to interfere with a child's ability to socially interact and relate to others, there is no indication that *this child* has exhibited a markedly limited ability to socially interact. Jerome S. Nichols, Ph.D., concluded after F.L.'s mental status evaluation and intelligence test that she was functioning within the borderline range of intelligence, blaming her variability in performance on her emotional problems and difficulty concentrating. (R. 165) Yet at the same time, Dr. Nichols rated F.L's functional level on the high end of the moderate scale. (R. 164) Notes from Leonard J. Cohen, M.D., stating that F.L. has "a lot of adverse relationships with other students," (R. 246), contradict F.L.'s own testimony that she gets along fine with other kids when she is around them. (R. 308) Both her mother and her teacher have also remarked F.L. has no difficulty in this area of functioning. (R. 83, 85, 92)

7

Medical experts for Disability Determination Services, Dr. Julie Jennings, Ph.D., and F. Joseph Duckwall, M.D., opined that plaintiff's daughter has no limitations in the third domain. This assessment was affirmed by Dr. Howard Leizer, Ph.D., and Richard M. Surrusco, M.D., when the medical records were reviewed upon reconsideration. Plaintiff offers no medical opinion to the contrary. In short, no doctor has opined that F.L. has a marked or extreme limitation in the third domain.

While on homebound education, Lavigne's daughter may be isolated from her peers; however, this isolation is not enough to amount to marked limitation in the third domain. At best, the evidence suggests no more than a moderate limitation in F.L.'s ability to interact and relate with others. There is substantial evidence to support the ALJ's finding that plaintiff's daughter is not markedly limited in the third domain.

### B. Domain 4: Moving About and Manipulating Objects.

Plaintiff also asserts her daughter has marked limitations in the fourth domain: moving about and manipulating objects. Plaintiff claims that F.L.'s uncontrolled insulin dependent diabetes mellitus ("IDDM") and abdominal pain limit her ability to move about, as does her asthma. (Pl.'s Br. 12) Plaintiff contends the combination of these conditions causes F.L. to experience extreme fatigue and desire to sleep all the time. (Pl.'s Br. 12; R. 307, 312-13) As her daughter is frequently ill, plaintiff states F.L. is unable to move about and manipulate objects to the same extent as her peers. (R. 12-13)

The ALJ, however, found that Lavigne's daughter has no limitations in her ability to move about and manipulate objects. (R. 26) The ALJ stated that any limitation plaintiff's daughter has in her physical ability is due to asthma, which is medically controlled. (R. 26)

8

The regulation defines the fourth domain as how a claimant's body moves from one place to another, and how a claimant moves and manipulates things. 20 C.F.R. § 416.926a(j). In essence, this domain deals with the development of a child's motor skills. Id. Examples of limitations in this domain include, but are not limited to, muscle weakness, sensory loss, trouble climbing up and down stairs, difficulty with balance or disorganized locomotion, difficulty coordinating gross motor movements, difficulty with fine motor movements, and poor eye-hand coordination. 20 C.F.R. § 416.926a(j)(3)(i)-(vi).

There is substantial evidence to support the ALJ's finding that Lavigne's daughter does not have a marked limitation in the fourth domain. Lavigne indicated that her daughter can run and play sports, but that her physical ability is limited due to her diabetes. (R. 84) Further, F.L.'s teacher indicated that she has no problems in the area of moving about and manipulating objects.

F.L. was given an accommodation plan at school which allowed her to excuse herself from physical education when she is having an asthma attack. (R. 126) Plaintiff's daughter testified in her administrative hearing that she has asthma attacks "just like every so often." (R. 306) She testified that there was no time a year when her asthma was worse, and that she has attacks one to three times per week. (R. 306) F.L. has been seen by a doctor for exercise-induced asthma on a few occasions, (R. 176, 179), but her medical records note no wheezing, (R. 177), good bilateral air exchange, (R. 179), and that F.L. took a deep breath with no effort. (R. 177) She was prescribed an inhaler and instructed to use it thirty minutes prior to exercise. (R. 179) F.L. testified that it helps control her asthma. (R. 306)

While plaintiff's daughter's asthma and diabetes somewhat impact her ability to exercise, such impairments fail to rise to the level of "marked" limitations in the fourth domain. There is no indication from the record that F.L.'s impairments interfere with her motor skills. There is no evidence that she has trouble lifting, pulling or carrying objects; moving her body within space; getting to school; using pens, pencils, or tools of any type. Additionally, her medical records state that she has no apparent physical handicaps, (R. 166), and a good energy level, (R. 147). She has experienced no sensory loss and has no musculoskeletal or neurologic symptoms. (R. 204) Plaintiff argues that F.L. is unable "to do much more than lie down" due to her frequent illnesses. (Pl.'s Br. 12-13) However, plaintiff presents no medical evidence to support this contention.

Additionally, medical experts for Disability Determination Services, Dr. Jennings and Dr. Duckwall, opined that plaintiff's daughter has no limitations in the fourth domain. This assessment was affirmed by Dr. Leizer and Dr. Surrusco, when the medical records were reviewed upon reconsideration. Again, plaintiff offers no medical opinion stating F.L. has a marked or extreme limitation in the fourth domain.

Accordingly, the ALJ's decision that plaintiff's daughter has no limitation in the fourth domain is supported by substantial evidence.

**C. Domain 6: Health and Physical Well-Being.**

Finally, plaintiff argues that her daughter has marked limitation in the sixth domain: health and physical well-being. In support of her argument, plaintiff notes that F.L. suffers from uncontrolled IDDM, asthma, abdominal pain, depression and anxiety, fatigue, and dizziness. (Pl.'s Br. 13) Plaintiff contends that despite the ALJ's finding to the contrary, her daughter is not

functioning well. (Pl.'s Br. 13) She picks her eyebrows and cuts herself, and has a low tolerance for stress. (Pl.'s Br. 13) In addition, she hears male and female voices in her head yelling and screaming. (Pl.'s Br. 13) Plaintiff also states that F.L.'s illness and emotional impairments often keep her out of school, indicating marked limitations in her health and well-being. (Pl.'s Br. 13-14)

The ALJ, however, found the claimant to have less than marked limitations in this sixth domain. The ALJ states that she "functions fairly well," (R. 27), that she has been able to take advantage of the homebound program to combat her difficulties at school, (R. 28), and that her academic performance has not been affected. (R. 28) Considering the cumulative effects of her impairments, as well as the medical testimony, the ALJ found F.L.'s limitations to be less than marked.

The regulation requires the Commissioner to consider "the cumulative physical effects of physical and mental impairments and their associated treatments or therapies" on a claimant's functioning, which were not considered in the fourth domain analysis. 20 C.F.R. § 416.926a(l). Examples of limitations in this sixth domain include, but are not limited to, generalized symptoms, somatic complaints, limitations in physical functioning caused by treatment, or the need to have excessive medical care to maintain a level of health and well-being. 20 C.F.R. § 416.926a(l)(4)(i)-(v). A finding of marked limitation in the sixth domain may be made if a claimant is frequently ill because of his or her impairments. 20 C.F.R. § 416.926a(e)(2)(iv). Frequent is defined as episodes of illness or exacerbation that occur on an average of three times a year, or once every four months, each lasting two weeks or more. Id. A finding of marked

11

limitation may also be made if a claimant's episodes do not occur as frequently as outlined above, or last as long, but if the overall effect of the episodes is equivalent in severity. Id.

Substantial evidence supports the ALJ's finding that plaintiff's daughter has less than marked limitations in the sixth domain. While she does suffer from IDDM, F.L. admittedly fails to comply with her dietary and exercise regimens. (R. 145, 148, 154, 203, 272, 277, 284, 305, 311) When she follows her diet and counts carbohydrates, F.L. does not complain about problems related to her IDDM and states her blood sugar levels are well controlled. (R. 144, 146, 151, 152, 190, 204, 208, 221) Though Lavigne's daughter complains of "intermittent" abdominal and stomach pain, (R. 146, 147, 167, 277), records indicate no abnormality and state that it is not a significant problem. (R. 139, 183, 194, 211, 214, 223, 237, 239, 246) F.L. underwent a number of tests regarding her abdominal pain. Her CT scan was normal, (R. 194), her upper GI series was normal, (R. 214), and her barium enema revealed a redundant, atonic colon. (R. 211) Plaintiff's daughter's stomach pain is not usually associated with fever, nausea, vomiting, or diarrhea. (R. 147, 195, 210) When she does complain of nausea and vomiting, F.L. reports good results with anti-nausea medication. (R. 277, 285)

While Lavigne's daughter also suffers from asthma, she stated she has an asthma attack "just like every so often" and controls these attacks with an inhaler. (R. 306) Medical records note F.L. suffers from reactive airway disease, (R. 200, 263), but that her lungs sounds are normal, she has no wheezing, (R. 177), and no restrictions were listed in her pulmonary function report. (R. 263) She also complains of constant fatigue, however her energy levels were reported to be good. (R. 147) Dr. Nichols noted "[i]t is possible that [her] physical complaints may have a psychological component." (R. 167)

12

Furthermore, plaintiff's daughter's anxiety and depression do not affect her health and physical well-being to the extent of "marked" severity. Though she claims to hear voices and has had suicidal ideation, a March 26, 2004 mental health services exam indicates F.L. does not suffer from hallucinations or delusions, and is neither homicidal nor suicidal. (R. 269) In fact, she is described as "intelligent, articulate, sensitive." (R. 270) In addition, Dr. Nichols remarked during her consultative psychological evaluation that there was no evidence of overt psychosis, and he diagnosed her with anxiety disorder. (R. 166, 168) She is often referred to in medical records as "pleasant." (R. 144, 145, 146, 147, 148, 149, 204) She appears to have a nervous tic which causes her to pick at her face and eyebrows, (R. 151), but F.L.'s endocrinologist Dr. D. James Bailey, III noted that her anxiety and depression are well controlled. (R. 204)

Dr. Nichols rated F.L.'s global assessment of functioning ("GAF") at 60. (R. 168) The GAF scale is a method of considering psychological, social and occupational function on a hypothetical continuum of mental health. The scale ranges from 0 to 100, with serious impairment in functioning at a score below 50, moderate difficulty in functioning at 60 or below, some functioning difficulty at 70 and below, and so forth. American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 1994). A score of 60 indicates that an individual is on the high end of the category in which the individual exemplifies moderate symptoms or moderate difficulty in social, occupational, or school functioning. Id.

While plaintiff claims her daughter is frequently ill due to her asthma and IDDM, both conditions are well-controlled by treatment when it is followed. There is no indication from the records that F.L.'s fatigue, anxiety or depression cause her condition to rise to the "marked" level of limitation.

13

Additionally, medical experts for Disability Determination Services, Dr. Jennings and Dr. Duckwall, found plaintiff's daughter less than markedly limited in the sixth domain, noting questionable dietary compliance, treatment through an insulin pump, and no significant end organ damage as a result of her IDDM. (R. 172) This findings was upheld upon reconsideration by Dr. Leizer and Dr. Surrusco. Once again, plaintiff has failed to point to any doctor's opinion stating that her daughter has a marked or extreme limitation in the sixth domain.

Accordingly, there is substantial evidence to support the ALJ's finding that plaintiff's daughter's limitations in the sixth domain are less than marked.

IV

As an alternative to finding F.L. functionally equals a listed impairment, the plaintiff requests that the court remand this case under either sentence four or sentence six of 42 U.S.C. § 405(g) for consideration of new evidence.

A "sentence four" remand is aptly named for the fourth sentence of § 405(g): "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A judgment affirming, modifying or reversing the Commissioner's decision must accompany a "sentence four" remand. Melkonyan v. Sullivan, 501 U.S. 89, 99 (1991).

Sentence six, on the other hand, authorizes the court to remand a case to the Commissioner upon a showing of new, material evidence, for which good cause can be shown for the failure to incorporate such evidence into the record in a prior proceeding. 42 U.S.C. § 405(g); Borders v. Heckler, 777 F.2d 954, 955 (4th Cir. 1985). Sentence six applies

14

specifically to evidence not incorporated into the record by either the ALJ or the Appeals Council. (See, e.g., Pl.'s Br. Ex. 1)

Neither a remand under sentence four nor under sentence six is prudent in this case. The evidence submitted to the Appeals Council is not conflicting or contradictory, and it fails to call into question the ALJ's decision. Additionally, the evidence submitted to the court by plaintiff does not meet the standard outlined in <u>Borders</u>, precluding a sentence six remand.

### A. Sentence Four Remand.

Plaintiff argues the court should remand this case under sentence four of 42 U.S.C. § 405(g) for consideration of the evidence presented to the Appeals Council after the ALJ issued his decision. The Appeals Council noted in its decision of January 7, 2005 that it considered the additional evidence submitted by the plaintiff, but found "that this information does not provide a basis for changing the Administrative Law Judge's decision." (R. 7) While the Appeals Council is not required by its regulatory scheme to provide a detailed statement of reasons regarding late-breaking evidence,[4] its failure to deal with such evidence in any fashion meaningful to the district court's substantial evidence review runs the risk of a remand to require the Commissioner to explicitly consider the additional evidence under certain circumstances. As the court noted in

---

[4] In three separate opinions, courts in this district have concluded that the Appeals Council is not required by its regulatory scheme to provide a detailed explanation of its consideration of evidence submitted after the ALJ's decision. See Riley v. Apfel, 88 F. Supp. 2d 572, 580 (W.D. Va. 2000) ("I agree with Judge Jones, see Ridings, infra, that the regulations do not explicitly require the Appeals Council to provide written findings with respect to any new evidence and its impact in light of the overall record and that this facilitates orderly decision-making within the agency."); Ridings v. Apfel, 76 F. Supp. 2d 707, 709 (W.D. Va. 1999) ("[T]he Appeals Council is not expressly required by the regulations to state its rationale for denying review."); Smallwood v. Barnhart, No. 7:03cv00749, slip op. at 2 (W.D. Va. Oct. 19, 2004).

15

Riley v. Apfel, 88 F. Supp. 2d 572, 580 (W.D. Va. 2000), "the agency leaves itself open to criticism when no explanation regarding material evidence within the record is provided." Id.

Because this new evidence was presented to the Appeals Council after the ALJ issued his decision, the ALJ never had the benefit of considering it. Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991), requires courts in the Fourth Circuit to review all the evidence in the record, including new evidence submitted to the Appeals Council, to determine whether substantial evidence supports the finding of the ALJ. Thus, the court is charged with reviewing the ALJ's decision "in the light of evidence which the ALJ never considered, and thus never evaluated or explained." Ridings v. Apfel, 76 F. Supp. 2d 707, 709 (W.D. Va. 1999). A remand is necessary where the additional evidence is "conflicting," or presents "material competing testimony," Riley, 88 F. Supp. 2d at 580 n.14; is "contradictory," Smallwood v. Barnhart, No. 7:03cv00749, slip op. at 3-4; or "calls into doubt any decision grounded in the prior medical reports." Ridings, 76 F. Supp. 2d at 710. If so, the case must be remanded to the Commissioner to weigh and resolve the conflicting evidence. If not, then the case can be decided on the existing record without the necessity of a remand.

In this case, the evidence presented to the Appeals Council, (R. 274-299), is not contradictory or conflicting, nor does it call into doubt the ALJ's decision. Records from Dr. Bailey contain F.L.'s complaints of episodic nausea and vomiting with no abdominal pain. (R. 277, 285) Additionally, Dr. Bailey notes plaintiff's daughter's compliance with her dietary constraints is "marginal at best," and thus her IDDM remains uncontrolled. (R. 277) F.L. reported a random glucose reading of 800, while admitting non-compliance with her diet, and her

16

mother remarked at the time that her daughter eats virtually continuously while at home. (R. 284)

Plaintiff also submitted to the Appeals Council a negative breast ultrasound, (R. 281), and an emergency room report from Dr. Cesar indicating F.L. came to the hospital with an asthma exacerbation. (R. 283) The doctor noted no wheezing and good bilateral air exchange. (R. 283) Finally, plaintiff submitted school records to the Appeals Council, including medication administration records, (R. 292), a number of clinic passes, (R. 293-296), and plaintiff's daughter's attendance record. (R. 299)

None of these submissions contradicts the findings of the ALJ. In fact, Dr. Bailey's records support the ALJ's contention that F.L. is non-compliant with her prescribed treatment. The emergency room records regarding F.L.'s asthma exacerbation are likewise not conflicting evidence; F.L. came into the emergency room with a cough, and nothing about the doctor's diagnosis calls into question the ALJ's findings as to F.L.'s functional limitations. The school records are also duplicative. The ALJ does not contest plaintiff's assertion that she has missed a great deal of school, or that she often feels ill. None of this additional evidence calls into doubt the ALJ's finding that F.L.'s impairments fail to rise to listing-level severity. Instead the evidence is cumulative, and thus the case can be decided on the existing record without a sentence four remand.

## B. Sentence Six Remand.

Plaintiff also argues for a sentence six remand based on additional evidence submitted to the court that was not considered by the ALJ or the Appeals Council. (Pl.'s Br. Ex. 1) The Fourth Circuit in Borders held a reviewing court may remand a case to the Commissioner on the

17

basis of newly discovered evidence if four prerequisites are met.  Borders, 777 F.2d at 955.  First,

the evidence must relate back to the time the application was first filed and it must be new, in

that it cannot be merely cumulative.  Id.; see also Wilkins v. Sec'y, Dep't Health & Human

Servs., 953 F.2d 93, 96 (4th Cir. 1991).  The evidence must also be material to the extent that the

Commissioner's decision might reasonably have been different had the new evidence been before

her.  Borders, 777 F.2d at 955.  There must be good cause for the claimant's failure to submit the

evidence when the claim was before the Commissioner.  Id.  Finally, the claimant must present to

the remanding court at least a general showing of the nature of the new evidence.  Id.

Plaintiff has met the fourth step of the Borders test in this case, as plaintiff has provided

the court with the evidence to be considered on remand and the court understands its nature,  see

Borders, 777 F.2d at 955, but has satisfied none of the other requirements for remand under that

case.  A sentence six remand is inappropriate because the evidence is neither new nor material,

nor has the plaintiff shown good cause as to why the records were not previously submitted to the

Appeals Council.

The evidence submitted to the court in exhibit 1 to plaintiff's brief includes medical

records from Leonard J. Cohen, M.D., dating from April 5, 2004 to September 20, 2004.  The

records consist of three office visit reports, as well as a lab report.  On April 13, 2004, F.L.

visited Dr. Cohen complaining of a cough, cold and congestion.  (Pl.'s Br. Ex. 1)  She was

diagnosed with an upper respiratory infection.  (Pl.'s Br. Ex. 1)  Three days later, Lavigne's

daughter returned stating she was coughing so badly that she was vomiting.  (Pl.'s Br. Ex. 1)  It

was noted her nose remained congested but her lungs were clear.  (Pl.'s Br. Ex. 1)  She was

prescribed new medications.  (Pl.'s Br. Ex. 1)  F.L. again visited Dr. Cohen on September 20,

18

2004, complaining this time of abdominal pain and vomiting. (Pl.'s Br. Ex. 1) She stated that

her blood sugar had been running in the high 500s or more. (Pl.'s Br. Ex. 1) She was diagnosed

with gastroparesis, exacerbated by her "very poorly controlled diabetes." (Pl.'s Br. Ex. 1)

These records are cumulative, and thus do not constitute new evidence as defined by

Borders, 777 F.2d at 955. Once again, records reveal plaintiff's daughter's IDDM is poorly

controlled, and as previously noted, it is likely due to her lack of discipline in following her

prescribed diet. Additionally, F.L. continued to complain of stomach pain, and she was

diagnosed with gastroparesis. She has received this diagnosis on a number of other occasions.

(R. 222, 277, 284, 285)

This evidence would likewise not change the Commissioner's decision and therefore, the

evidence is not material. In addition to the records regarding her IDDM, the other evidence

shows she suffered from a brief respiratory infection which was treated successfully by

medication. (Pl.'s Br. Ex. 1) Even were this evidence considered new, it certainly is not

material, in that F.L.'s respiratory infection would not impact the Commissioner's decision that

she does not functionally equal a listed impairment.

Finally, the medical records provided by the plaintiff date from April, 2004 to September,

2004. The plaintiff has not shown good cause as to why these records were not presented to the

Appeals Council before it issued its decision of January 7, 2005. In fact, the evidence plaintiff

did submit to the Appeals Council for review consisted of a number of medical records dating

from March, 2004, to November, 2004. The plaintiff has not given a good reason for why the

medical records submitted to the court in Exhibit 1 were not submitted to the Appeals Council,

as were the other medical records from a similar time period.

Additionally, plaintiff submitted to the court on October 24, 2005 a report from an office visit to the Physician Associates of Bedford on August 20, 2005. Plaintiff may be able show good cause as to why this evidence was not provided to the Commissioner to review, since the visit took place after both the Appeals Council and the ALJ issued their decisions. See Borders, 777 F.2d at 955. However, the evidence is not material. In the August, 2005 visit, F.L. complains that the right side of her face is numb. She is unable to smile and is unable to close her right eye completely. Plaintiff's daughter was treated symptomatically for this condition and was told it may take several weeks to resolve. This report would not impact the Commissioner's decision that F.L. is not markedly limited in any of the three domains discussed previously. See discussion § III, supra.

As none of the evidence presented to the court by the plaintiff would warrant a sentence six remand under Borders, the decision of the ALJ is affirmed.

## V

Substantial evidence supports the ALJ's finding that plaintiff's daughter does not functionally equal a listed impairment. Contrary to the assertions of the plaintiff, F.L. does not have marked limitations in the areas of interacting and relating with others, moving about and manipulating objects, or health and physical well-being. No medical opinion cites a marked or extreme limitation in any of these three domains. Furthermore, remand is inappropriate in this case under either sentence four or six. Accordingly, the decision of the Commissioner is affirmed, and plaintiff's motion for summary judgment is denied.

In affirming the final decision of the Commissioner, the court does not suggest that plaintiff's daughter is totally free of all pain and subjective discomfort. The objective medical

20

record simply fails to document the existence of any condition which would reasonably be expected to result in total disability for all forms of substantial gainful employment. It appears that the ALJ properly considered all of the objective and subjective evidence in adjudicating plaintiff's claim for benefits. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence. Defendant's motion for summary judgment must be granted.

The Clerk of the Court hereby is directed to send a certified copy of this Memorandum Opinion to all counsel of record.

**ENTER**: This _____ day of February, 2006.

Michael F. Urbanski
United States Magistrate Judge

21